**488**

In the Matter of the ESTATE of Eltie E. CULVER, Deceased.

Ernest ANDRES, Petitioner [Appellee below],

v.

Kenneth CULVER, Respondent [Appellee below] and Appellant,

and

Charlotte [Touchie] Morris, Respondent [Appellant below] and Appellee,

and

Lizeta Rustan, Respondent.

Civ. No. 9215.

Supreme Court of North Dakota.

Oct. 15, 1976.

George T. Dynes, Freed, Dynes, Malloy & Reichert, Dickinson, for respondent and appellant Kenneth Culver.

Allan L. Schmalenberger, Mackoff, Kellogg, Kirby & Kloster, Dickinson, for respondent and appellee, Charlotte [Touchie] Morris.

VOGEL, Justice.

This appeal involves the interpretation of the following paragraph of the last will and testament of Eltie E. Culver:

## "II

"I hereby give, devise and bequeath unto my son Kenneth Culver, my farm in Hettinger County, North Dakota. However, I place a charge on this bequest to him, to pay 50% of the value placed thereon by the appraisers of my estate, 25% thereof to my daughter Lizeta Rustan and 25% thereof to my daughter Charlotte Touchie. If for any reason my son does not wish or it is inconvenient for him to pay 50% of the appraised value of said farm to my afore mentioned daughters, then he is empowered to sell said farm, under the best terms and conditions as he, in his judgment, shall be to the best interest to my estate. And from the proceeds thereof, to pay 25% each to my daughters Lizeta Rustan and Charlotte Touchie."

The North Dakota probate proceedings involved only a 160-acre tract of land described as "my farm" in the will. The North Dakota probate was ancillary to a probate in another State.

During the course of probate of the will, the North Dakota county court appointed appraisers who returned their inventory and appraisement of the land. Later, after some of the parties had objected to the appraisal, the trial court appointed new appraisers who filed an inventory and appraisement showing a much higher value. The county court then, after a hearing, entered its order finding the value of the property to be an amount different from either of the appraisals. Upon an appeal to the district court, with trial anew, the parties offered the testimony of expert appraisers who valued the land separately, and the district court entered its judgment finding the value to be the same amount as that given by the second appraisers.

A table showing the various appraisals follows:

| Appraisal by | Dollar Value | Value Per Acre |
|---|---|---|
| First appraisers | $ 27,600.00 | $ 172.50 |
| Second appraisers | 50,400.00 | 315.00 |
| County Court's Determination | 32,000.00 | 200.00 |
| Appraiser Knudson in District Court | 56,000.00 or 55,418.00 | 350.00 |
| Appraiser Neprash in District Court | 50,400.00 | 315.00 |
| Determination by District Court | $ 50,400.00 | $ 315.00 |

The county court has a duty to determine the market value of all items of the estate for estate tax purposes, and very often for the purpose of making division of property as directed by will or statute. However, this duty to determine market value may be limited, so far as the distribution of property subject to bequest or devise is concerned, by reason of the specific provisions of a will. For example, an executor might be directed by a will to distribute stock according to its cost price or par value. Such a direction would be binding, even though estate taxes would be based on a different value.

This is such a case. The specific language of the will provides that the amount to be given to each daughter in lieu of an interest in the farm is to be determined by the "value placed thereon by the appraisers of my estate." Thus it is immaterial, so far as the daughters are concerned, what value the county court (or the

district court, on a trial anew) places upon the real estate. The amount the daughters are to receive is fixed by the plain language of the will as "50% of the value placed thereon by the appraisers of my estate." The ultimate value fixed by the county court or district court for tax or other purposes may be more or less than the amount fixed by the appraisers of the estate, but the latter figure governs in determining the amount of money to be paid to the daughters by reason of the charge on the bequest (actually, the devise) to the son.

The next question is whether the term "appraisers of my estate" refers to the first set of appraisers or the appraisers who made the reappraisal. If the county court had authority to appoint a new set of appraisers, then we hold that the figure selected by the second set of appraisers will govern. On the question of whether the county court had the power to appoint a second set of appraisers or to order a reappraisal, we find only inferential authority in our decisions and statutes. As recognized in *In re Kaspari's Estate*, 71 N.W.2d 558 (N.D.1955), the only statute related to reappraisals of estates is Section 30–16–07, N.D. C.C. (repealed by the passage of the Uniform Probate Code, effective July 1, 1975, which is codified as Chapter 30.1, N.D.C.C.). Since the parties tried the case on the theory that the old statutes applied, and the death of the decedent occurred while the old statutes were in effect, we will likewise apply them.

Section 30–16–07 provided:

"Upon the return of the inventory and appraisement in an estate, the court may fix a day for hearing objections thereto concerning the homestead and other exempt property, and the executor or administrator shall thereupon cause notice thereof to be given to all parties interested. At the hearing, the court may confirm the proceedings as to the inventory and appraisement and set apart the homestead and other exempt property, or may modify such proceedings or set them aside and order a new appraisement, as justice requires."

Although this section was couched in terms of objections to the inventory and appraisement "concerning the homestead and other exempt property," it did authorize the county court to hold a hearing on the inventory and appraisement and to order a new appraisement, if justice required. The *Kaspari* case holds that the county court is within its discretionary powers in holding a hearing on the inventory and appraisement, and goes so far as to hold that a party to a probate proceeding who has notice of such a hearing and does not appear is bound by the order entered after the hearing is held, upon principles of res judicata, and cannot successfully object to the inventory at the time of the hearing on the final report and account of the executor.

Regardless of statute, we hold that a county court has the inherent power, for good reason, to order a reappraisal. *Phelan v. Smith*, 100 Cal. 158, 34 P. 667 (1893); *Martin v. Sherwood*, 197 Okl. 422, 172 P.2d 393 (1946). We also hold that the appraisal made by the second group of appraisers, appointed by the county court under its power to require reappraisal, constituted a valid appraisal of the farm by the appraisers of the estate of Eltie E. Culver and is therefore the value to be used in making payments to the daughters under the will.

The district court's determination of $50,400 as the value of the property is therefore correct, since it is identical in amount with the appraisal of the second appraisers.

We affirm the judgment of the district court.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.